Have you seated? Good morning, ladies and gentlemen. We are here for re-hearing en banc in the case of Skidmore v. Zeppelin. And remember to silence your cell phones. Thank you. You may proceed. Yes. Thank you. I'm going to reserve 15 minutes for rebuttal. I understand I have to watch the clock on that. May it please the court, may it please the defense counsel, may it please everyone in this courtroom, my name is Francis Alexander Malafie of the law firm Francis Alexander. With me here today is my partner, A.J. Fleur, along with Glenn Kulik, and also plaintiff Helen is here in that back row. Justice is the search for the truth. And that's the ideal we strive for, whether it's in the state, whether it is the country, or whether it's the circuit. And when we don't find that truth, we have to ask ourselves why. And when we ask ourselves why, we have to consider whether or not we've exalted form over substance. And if we have exalted form over substance, we have to look and determine whether or not that's fair, that's equitable, or whether or not exalting form over substance is supported by the law. In this case, the answer is no. And it's not because I say it's no. It's because this court says no. This case, the underlying trial, the panel opinion, which we respect, we have one issue, and that issue is the form over substance issue, and that issue is whether or not we were ever afforded the consideration of the prejudice analysis in Three Boys Music. Three Boys Music is the law in this circuit. Three Boys Music says very clearly that absent an intent to defraud, inaccuracies in the deposit copy, the court is given broad and deferential consideration to not consider them and look to other evidence, best evidence, better evidence. But there's one thing. Neither in the trial court, neither the panel opinion, was that prejudice analysis ever considered. And what prejudice analysis is there? It's the prejudice of whether or not, one, we can identify the work at issue. Everyone knows the work at issue is Taurus. So then it goes to, well, if we can identify the work at issue, there's no prejudice there, then it goes to, what, if there's any prejudice to defendants? Let's consider the prejudice to defendants. We know, because we have testimony, in our opening brief, page 41, excerpt 5, page 507, 508, Jimmy Page never went to Washington, D.C., and went to the copyright office, never pulled out a dusty lead sheet of Taurus, never copied from Taurus, right, from the deposit copy. So why are we looking at this artificial analysis that never happened in the real world? It's wrong. It's artificial. It's imaginary. What we do know and what we proved at trial was that Jimmy Page had five of Spirit's albums in his record collection. What we know is that he was a fan of Spirit. What we know is he opened for Spirit in their first U.S. show. He opened for the band. He was familiar with the band, and he liked them on an emotional level. But what did he have in his record collection? The same side as the song Fresh Garbage, which they performed live many, many, many times, the fourth song was Taurus. Jimmy Page admitted he can't read music. He never read the deposit copy lead sheet. He never saw that. What work, in your view, is entitled to copyright protection? I'm sorry? What work, in your view, is entitled to copyright protection? If we're shifting to substantial similarities. No, I'm asking a question. What work is entitled to copyright protection? That should be simple. In this case, we believe that it's the full composition as embodied on the album recording. So not the deposit copy, but the album recording is what you think is entitled to copyright protection. I think in a- Yes? Yes? I think that yes, that is true in this instance. But I think in a perfect world, the deposit copy would fully embody the full composition. Okay, but in this case, you don't think the deposit copy is what was infringed. You think the sound recording was what was infringed, correct? I think that we have to look at the prejudice analysis of Three Boys Music. I'm not asking about prejudice analysis. I'm asking a very simple question. In this instance, yes. So what case do you cite for the proposition that not the deposit copy, but a subsequent sound recording is entitled to copyright protection? Well, I think we go to the Three Boys Music with the prejudice- What do we do with Abco? I'm sorry? What do we do with Abco Music that says that for under the 1909 Act, sound recordings are not protected? What do we do with that case? I think we have to look at the Whitesmith case. The Whitesmith case said that copies can only be sheet music. So what happened was it invited Congress in 1909 through the 1909 Act to expand it past sheet music to look at what? Piano rolls or mechanical reproductions. A piano roll, which is a mechanical reproduction, which does embody the composition- But you just said in response to Judge Hurwitz's question that the copyrighted piece was the sound recording. But our case law, Abco Music v. Laverre, says you can't get a copyright on performances and sound recordings under the 1909 Act. I would make it a little more clear. I don't think it's the sound recording that's the copyright. It's the composition embodied in the sound recording. And it's the same as- To be clear, you want to take the sound recording and essentially reverse engineer what would be the sheet music for the sound recording? Is that what you're arguing? What we know is that- Yes or no? I think you could look at it that way, yes. What's your best authority for that? For reverse engineering it? would be looking at Three Boys' music, which says absent prejudice, absent intent to defraud, absent- Even if there's inaccuracies in the deposit copy, you can look to other evidence, including the sound recording, which was done by- But Three Boys says that can be evidence. You seem to be taking a broader proposition. You seem to be taking the proposition that the sound recording is itself protected by copyright, which is why I asked the question. It's the composition embodied in that sound recording, not the actual sound recording itself. That happened later. We never made the argument that this is a sound recording copyright. We made the argument that embodied in mechanical reproductions, embodied in piano rolls, embodied in sound recordings is the actual composition. Is the argument, then, that the deposit copy in this particular case, there's no infringement there, but there's infringement if you take the sound recording and you basically embody it into notes on a sheet, and that's what was infringed upon? I would say yes. That's one way to look at it, and I think that's accurate in this instance. Why? In a perfect world, the deposit copy lead sheet would be exactly the same as the composition. But when that isn't so, and when there isn't prejudice, and when there is inaccuracies, however large the magnitude, the courts have brought in deferential treatment to say, okay, what's the better evidence? The better evidence is the evidence that Jimmy Page and Robert Plante had access to, not something they never saw. So if he copied – let's break it down, a logical argument. I'm sorry. You base a lot on something they never saw. Right. I mean, that – when you look at copyright cases, they're not predicated on the notion that the infringer actually went to the copyright office to see what was deposited. I mean, that's just a fantasy that you're talking about. That's the alternate reality. It doesn't exist. Of course not, in any copyright case. I would say no, because – and let me share with you why. Copyright, you have to prove ownership. We did that in trial. You have to prove access to a piece of work. And then what's the second part logically? You have to show not only access to a piece of work but copying from that piece of work. If we're showing access to a piece of work but copying from something else, it's an artificial analysis. It exalts form over substance. Perhaps, but are you conceding today that if you are confined to the deposit copy, your copyright claims are – just can't – are not viable? I think that it is very difficult for plaintiff to win based on the deposit copy because it was such an inaccurate transcription of the composition which Randy California wrote. Let's be clear. Randy California never wrote the deposit copy. Randy California never – So is that a yes? That if we were limited to the deposit copy, then there would be no infringement because that's not, as you say, an accurate reflection of the sound recording. But if you were to take aside – set aside the sound recording and focus just on the deposit copy, then plaintiff could not prevail? I think there's two aspects to that question. The question is do we look at it in the concept – Counsel, that really was a yes or no question. It would be helpful to all of us if you would answer it yes or no. I think yes. I think that is the reality of the situation because the inaccuracies are so drastic. Is what your original work, then, is the claimed two minutes and 14 seconds of the sound recording? Is that the copyright that you're claiming? No, it's the composition embodied in the album recording. Is there any case that – Can you say what that is, though? The composition of what? The two minutes and 14 seconds? Right. Okay. Is there any case that takes the position that you're taking, which is that a sound recording – there's no copyright available in the sound recording, but nonetheless you can write down the transcript of the sound recording and somehow that is separately copyrighted by the copyright of the deposit copy? Is there any case that says that? Well, I think there's a few steps I have to work through to get to that answer and to answer your question fully. The 1908 White Smith case basically said that only sheet music are copies, and therefore there can be no infringement. It invited Congress to expand the scope. Congress came back in the 1909 Act and said, you know what? Piano rolls are capable of embodying the composition. A piano roll is no different than a sound recording, not for the purpose that – It does not embody the deposit copy. That's your whole point. Because if it were just the deposit copy, it wouldn't be anything like what you're claiming has been infringed. So I'm asking about whether there are any cases that jump through all of those hoops that you want us to jump through. You really look at two cases. You look at three-voice music, and then you also look to Williams v. Gay. In Williams v. Gay, so long as it's represented in the deposit copy, it's okay. The deposit copy and the sound recordings, that composition is embodied in the deposit copy as well as the deposit copy is embodied in the sound recording. The issue is it's inaccurate and it's not fair to exalt form over substance when everyone knows the piece at work at issue, which Jimmy Page had. The three boys said that they would not disturb the jury's verdict that Isley Brothers had deposited a complete copy, even though there were inaccuracies in it. And they had an expert testifying that the deposit copy included all of the song's essential elements, such as the title hook, chorus, and pitches. Is that the same in your case, that it was a complete copy and it had all essential elements in the deposit copy, even if there were some variations? I think the court said that even, although there's inaccuracies, so long as these things are represented in some way. They said all of the essential elements were included. Were all the essential elements included in the deposit copy in your case? I would agree, yes, the essential elements, the descending chromatic scale, the key. Some things are left out, like the rhythm and the tempo, but we know what those are because we know the piece of music at issue. There's no prejudice. So although it's not like the deposit copy is completely foreign to the album recording, it's just a bad transcription. We know what we're talking about. We know there was inaccuracies. We know that there's no prejudice to the defendants. He had it in his record collection. We proved access. Access to what? To the album recording. And they were making an artificial comparison to something that doesn't exist in the real world. Why does Led Zeppelin, why do defendants not want to hear the album recording? Because they will absolutely lose the case. The case could have been tried. And you lose the case unless they do. I think very challenging. A hundred times out of a hundred, right? No. When you listen to these two recordings, the deposit copy and the performed copy by Led Zeppelin, I don't see how any juror could find them substantial. They're essentially similar, even with expert testimony. So you've got to get your sound recording in in order to win this case, don't you? We have to bring in the best evidence and the fair evidence. Well, you've got to get it in to win, don't you? I think so, but there is some leeway, as in the Marvin Gaye case, Williams v. Gaye. So long as it was represented in the deposit copy, experts could extrapolate and also fill in the missing gaps. Experts can speak. I'm just speaking practically. Experts can speak all day long. But when the jury hears the deposit copy against the Led Zeppelin recording, no jury of laypeople is going to think they're substantially similar. Unless you strip out the performance elements. And if you strip out certain performance elements, like the harpsichord. Sure, unless you redo the deposit copy. No, no. In other words, some things are an accompaniment, the harpsichord. But look, what happened at trial, you're making it sound like we took the deposit copy of Taurus and the deposit copy of Stairway to Heaven and that's all the jury saw. There was extensive trial testimony about each of these things you're talking about, the pitch, the arpeggios, the descending elements. All of that was gone into at great length by the experts, was it not? Although there were dueling experts. I would agree with that, but I also agree. Well, then what's the prejudice to you? The prejudice is that even so, the court and even the panel opinion basically said that you could never use a sound recording in a pre-76 case. And that has never been the law in 110 years. This is the first time a panel or this court has said you cannot use a sound recording in a pre-76 case. It's not the law. But to be more specific. So how do you distinguish Adco Music, which held that? I'm sorry, Adco Music versus what? Edelweir, which held that it's not copyrighted? That the performances and sound recordings are not the copyrighted work? Performances and sound recordings aren't the copyrighted work. But Goldstein v. California 1973 Supreme Court opinion says compositions are embodied in the sound recording. And that's how you get through that case. And it's very clear that's a Supreme Court case which we have to follow. Can I ask you? Yes, it's not. I'm sorry. Can I finish? Thank you. I appreciate that. It's not the sound recording and the performance elements that we're copying. It's the composition embodied in the sound recording. And the Congress invited broader scope when it said piano rolls can embody composition. If piano rolls can embody the composition, then so, too, can an album. And so, too. But that's not what the copyright law says. If we reject your analogy. I mean, there was a reason, of course, that Congress put piano, that they put piano rolls in. Because it was in direct response to the court's ruling on piano rolls. But you now want us to say, well, by putting in piano rolls, they really also meant sound recordings, which they explicitly excluded. My question is if we reject your analogy on the piano rolls, then don't you lose on the sound recording argument? No, because it's not the sound recording copyright. It's the composition embodied in the sound recording. Composition can be embodied in mechanical reproductions. A piano roll is a round cylinder, which plays back composition no different than an album, which is flat, which has bumps and grooves and plays back composition. If an instrument, a mechanical reproduction, can infringe on a composition, so, too, can it identify the composition at issue? Can I ask you just on your fairness point? Yes. Am I wrong in thinking that after the 1976 Act was enacted, that your client could have just used the sound recording as the deposit copy? You know, it's a loosey-goosey argument that defendants made. They basically said because they cherished the intro of Stairway to Heaven and they cherished the solo part of Stairway to Heaven, it doesn't appear in their deposit copy. That's not an answer to the question. Again, it would be helpful if you would answer the question, which is whether your client could have, after 1976, copyrighted the album and restated it, essentially, into the composition you're asking us to consider as the copyrighted work. Sorry, and let me be more specific. There's law that says that you can't expand a copyright once the initial copyright was – the registration was actually filed. But there is the law in 1976 which says that those parts that are unpublished could technically – excuse me, let me restate that. Unpublished songs get copyright protection after 1978. Right, and your point is that the sound recording embodies such a more fulsome and richer version of the composition that it's really a different work in a lot of ways. And so that's why I thought the argument on the other side against you was correct, that you could have avoided all of what we've just been debating for the last 20 minutes by simply – if your client had simply used the sound recording as the deposit copy after the 76 Act had been enacted. I don't think we can expand the scope once registration has happened. The argument that defendants made was the solo and the intro are actually copyrightable because, oh, they're unpublished aspects of an individual work. It's really a weak argument because – but it does show one thing. Copyright exists at the moment of creation. That was the law based on common law in 1909, even before 1909, and up until 76. There's been a big distinction and a big misunderstanding, I think, with many copyright attorneys, the confusion between as created and as registered. But then the federal copyright supersedes the state common law one, correct? Well, in 76 it does. In 1909 it does not. And we have ample legislative history which shows the 76 Act history definitely supports plaintiff's position here. And it talks at length about doing away with the dual system and moving to the single system. And so the first time Congress has ever talked about this issue of state common law copyright and federal copyright, statutory copyright, was not in 1909, not in the many years we have because it was always viewed as jurisdictional. It was in the 76 legislative history, 67 years later. That's when the Congress commented on it. And when you look at the comment, they say all states had equivalent legal and equity rights known as common law copyright. And it says, quote, House Representatives Report No. 94-1476, and this is in our briefing too, instead of a dual system of common law copyright for unpublished works and statutory copyright for published works, which has been the system in effect in the United States since the first copyright statute in 1790. The bill adopts a single system of federal statutory copyright from creation. This is the first time Congress has discussed this issue. And the issue was we're sitting here 110 years later trying to figure out what Congress meant 110 years ago. It's never been an issue. And the reason it's the first impression is because it was always understood to be jurisdictional. It was a dual system, state common law and then front unpublished works, which we have here, and then federal statutory scheme. And that's the dual system that was done away with a single system in 76. I just want to make clear then your position. If we take the position that the copyright is limited to the deposit copy, then the whole trial was irrelevant in your view?  I think that what happened in the trial was a travesty of justice because we were in an artificial Orwellian world comparing two things that Randy didn't write and which Jimmy Page didn't read. So what's my answer to the question? I think the answer is that we need a retrial and we have to remand. But let me go back because I understand you would like a retrial. But if your copyright by virtue of law is limited to the deposit copy, what would be different? You want a retrial on that? If that is the law, then what would be the retrial? Very simple. And I'm going to reserve my time here because I just looked at it and it's 8.38. I want to keep that for rebuttal. But this is very simple. The prejudice analysis of Three Boys Music, which holds in this case. Absent intent of defraud, there's none here. Absent intent of defraud or prejudice, there's none here. Broadened deferential consideration of looking at other evidence. If the copyright office had lost the deposit copy, we'd look at the album recording and the composition embodied there too. There's no prejudice to the other side. We have broadened deferential consideration. In other words, if the law is that the deposit copy is the four corners of the copyright claim, then there's nothing else to retry, correct? If that's the law, but I suggest it's not. I understand that you disagree with that. I have a question. Go ahead. Sorry. You mentioned – Is that going against my time? Yes. It's our time, not yours. It's our time. Very well. We're here for you guys. You mentioned Williams v. Gay. And I just want to understand what your view is on whether how that guides us or cabins our options here. Okay. I think that the first time in 108 years where the album recording wasn't used and the trial court constrained, the scope of what could be considered was the gay court. But in the Williams v. Gay court, they at least allowed them to extrapolate and do representation. So long as it represented in some way in the deposit copy, they were able to extract that and play what was in the album recording. But you couldn't play something that wasn't represented in some way. In other words, if it had a court, a C court, you could extrapolate the arpeggio from that even though if it wasn't listed there. And I think that's the issue at issue here too. Then it was constrained one step further by saying no sound recording ever. We will never look at it in a 76 case, and that was the panel opinion, saying that in any 76 case we do not look to any composition embodied in the album recording. All we can look at is the deposit copy lead sheet. If that's the case, it will disenfranchise hundreds of thousands of pieces of work, some of the greatest works we know. It will affect songwriters forever, including Freebird, including Led Zeppelin's Stairway to Heaven, which they have protected for 40 years. Even though those elements that are most critical to that song are not even in their deposit copy, it would forever change things. And to put things in magnitude, Stairway to Heaven is 11,000 notes. The deposit copy is 400 notes. It represents 3.6% of the composition in Stairway to Heaven. No different, at least, and no different does that have inaccuracies. And absent the most critical aspects of the music which Jimmy Page has identified as the solo and the intro, we have inaccuracies too in ours. If record companies and publishers recognize that this would forever disenfranchise, if they understood that filing a skeleton outline of maybe a page or two, when a full score would take 20, 30 pages and about $50,000, it would have changed the whole concept of how we look at these things. And luckily, the 76 Act changed that. I'm going to reserve that time right now. I hope I answered your questions, and thank you. A humbling experience being before you all. And Ring v. Arizona, great case. Thank you. Thank you, Chief Judge Thomas, and may it please your honors. My name is Peter Anderson, and I represent the defendants. I'd first like to respond to some of the things that counsel said. At no point in this case, in discovery, at trial, or in the original briefing, did plaintiff ever take the position that the deposit copy was in error. The deposit copy is signed by D. Hansen, H-A-N-S-E-N. Mr. Hansen was a witness that plaintiff identified, and plaintiff submitted his declaration, which appears at Volume 10 of the Excerpt of Record at 2526. Mr. Hansen was a friend of spirit. His declaration was offered to authenticate multiple recordings in 1967 and 68, bootleg recordings. At no point did the author of the deposit copy ever say there was an error in it. At no point did plaintiff ever argue, submit any evidence that the deposit copy was incorrect. Now, Randy California had signed an agreement with Lou Adler's company, Hollenbeck Music, and transferred all of his rights and all of his compositions to Hollenbeck Music. Hollenbeck Music, now Lou Adler is one of the most successful producers of all time. He had the wealth to prepare whatever deposit copy he wanted to in the song that he owned, and that's what he did. And, again, at no point was there a suggestion that it was ever an error. Can I ask you to switch issues a little bit? The panel said that the jury instructions in this case were erroneous. Why was the panel wrong? When I read the panel opinion and read the jury instructions, and I realize we vacated the panel opinion, but we can read it, it makes sense to me. Tell me why the panel was wrong. The panel was incorrect because the plaintiff's theory of trial triggered the appropriate instruction, and the plaintiff's theory of trial was never a selection and arrangement. The whole transcript, all volumes of it, there's never a mention of selection and arrangement. Why did you propose a selection and arrangement instruction, then? Why did I? Why did your side? I'm not you. We did because we saw their claim, which was that Stairway to Heaven and Taurus combined these elements. We saw that as a defective selection and arrangement claim. And so I submitted an instruction that said if you're going to go selection and arrangement, then the arrangement has to be original. It has to be numerous elements in it and virtually identical. And the Court may have erred by not giving it. My question is this. They thought it was a selection and arrangement case, too, because they proposed an instruction on selection and arrangement. They didn't, actually. What they proposed was an instruction. They proposed two. It may have been a faulty instruction, but it seems like a selection and arrangement instruction. I'm sorry. They submitted two instructions that are important. The one instruction that I believe you're referring to, Your Honor, said that if there's a combination of public domain elements, that can be protected. That's selection and arrangement, isn't it? Actually, no. Because if we look at Feist. Well, it seemed to me your theory was that because they used the word combination instead of the word selection and arrangement, they therefore did not make any selection and arrangement argument. If we disagree that they needed to use the word selection and arrangement, what was the difference between their combination requests and instructions and a selection and arrangement instruction? It failed to require originality in the arrangement. That was the problem with their instruction. It failed to require numerous elements as was required as a topic. Let's say we agree with you. Let's say we agree with you that their proposed instruction was incomplete. The panel wasn't so much critical of their instruction as of the district judge's failure to give any instruction on this topic. Why wasn't this a topic on which the judge should have instructed? My apologies. I'm sorry. Common problem. It's my enthusiasm, and I apologize. He did give an instruction that covered the plaintiff's theory. The plaintiff's theory was that there were public domain elements in the work and that there was at least a minimal amount of creativity. That is instruction 20, which the Court gave. Instruction 20 was the case. What about 16? The panel said 20 by itself is not inaccurate, but given what it thought was the inaccuracies in 16, 20 made it worse, if you will. So what about 16? Well, the problem with what made it worse, if I could just touch on that briefly, was the panel felt that it made it worse because it said in 20 it had the language that public domain elements do not become protected. That's black-letter copyright law. That is not an error to say that in Harper House and this Circus Law. And the panel said it's not technically inaccurate, but they can become protected in certain combinations and selections and arrangements. And so let's go back to 16. That's the one the panel thought had some difficulty. Why wasn't 16 inaccurate? 16 wasn't inaccurate because it provided, especially when coupled with 20, provided the law that applies to the plaintiff's theory of the case, which was not a selection and arrangement theory. Where did the court tell the jury that otherwise unprotected elements in combination could be protected? Implicitly, if not expressly, in 20. So your answer is no, the court never said that. So what's the best language that's closest to that? Because what I'm looking at in instruction number 16, it says copyright doesn't auto-protect ideas, themes, or common musical elements such as descending chromatic scales, arpeggios, or short sequence of three notes. So where does it say but an original combination of those or an original arrangement could be protected by copyright? Your Honor, I believe you have to take it in conjunction with 20. As to 16, it's an accurate statement of the law. But what language in instruction 20 says that? Instruction 20. It says any elements from prior works or the public domain are not considered original parts and are not protected by copyright. So there really is nothing that says putting all of the unprotected parts together in an original way can't be protected by copyright. That's what I'm looking for. It says something broader. It says that a work can include and incorporate elements taken from prior works of the public domain. But there is originality if the work is independently created by the work's author, that is, the author did not copy it, by use of at least some minimal creativity. Counsel, up here. Oh, sorry. Hello. I wonder why you're fighting this so hard because it seems to me at least that assuming that the copyright analysis is limited to the deposit copy, it seems to me that any error here is harmless because no reasonable juror could find that the alleged copying was unlawful appropriation of the deposit copy. So do you agree with that? And if so, why couldn't we simply assume that the instructional error occurred and find any error harmless? I was trying to be responsive to the specific questions, but I agree wholeheartedly. No reasonable juror could find that the claim similarities are a protected selection and arrangement, an infringement in any form at all. It came down to the testimony of two experts, and the plaintiff's expert was repeatedly basically impeached by his own exhibits and by the testimony of the defendant's experts. The expert testified that they were original, and he explained why. So should this panel overrule the jury's view of the experts or take the place of the jury and say that expert is not reliable, and if so, why? Absolutely not. The jury decided there was no infringement. But with the absence of any instruction allowing them to find that a combination of unprotected elements could be protected in combination. But if we look at what the plaintiff's expert testified to, he testified to a similarity in the fact that there were cords that were broken. He admitted, and our expert showed, and the plaintiff's expert. He may have been the worst expert in the world, but he did testify that Led Zeppelin's song infringed the deposit copy, did he not? He was comparing it to the deposit copy. Yes. On the motion for summary judgment, he compared it to the studio recording. Right. But at trial, which is what we don't care about, denied motions for summary judgment, we don't review them. Right. At trial, he testified that it infringed the deposit copy. He may have been the least believable expert in the world. He may have. But we can't reject his testimony because he was impeached, can we? Isn't that for the jury? It's a matter of law that what he relied on, on his own testimony, was not in the deposit copy. For example, one of his arguments was that they both have broken cords. However, he admitted, and his own exhibits confirmed, that they were broken in a different order. So the only thing you have is the idea of breaking cords. The cords, he admitted, were commonplace. He testified that there was originality in taking only five notes of a common, basic scale instead of six notes. However, his own exhibit showed that there were multiple songs prior to Stairway to Heaven that included five notes rather than six, as he said. So your position is his testimony was not enough to get the case to the jury on infringement of the deposit copy? And we made a motion at the conclusion of the plaintiff's case. We made a motion. And the judge didn't rule on it. But I would look to the dissent in Williams' case where the court ---- Brilliantly written, by the way. Thank you, Judge Hurwitz. Where it said it's not an issue of believing the witnesses, the expert witnesses. When you take the plaintiff's own testimony, the plaintiff's expert's own testimony, and as a matter of law, it is not copyright infringement. On the other hand, if you look to the majority opinion in Williams, you have a problem. Yes, Your Honor. And I think there's two things that I could say about Williams. One is I do believe it was wrong for every reason that's in the dissent. I think, though, there's another point, which is that it's different. It is a case that affirmed a jury verdict. And it reflects the great deference that this Court has to a jury's determination. There you had testimony, which, by the way, there's no mention of selection and arrangement in Williams. They don't ---- it's not a selection and arrangement claim. The argument is that there were these similarities, not by nullity or notice, but on all these elements that go throughout the work. It's not on that. I think one of the difficulties here is the terminology that the parties are using, because it seems that combination and selection and arrangement seem to be used interchangeably, at least by Skidmore. In your view, are those different concepts? Absolutely, Your Honor. Feist explains that. It says 100 elements in a work, in two works, does not, or in any work, does not make an original work. There has to be, in addition to the fact that the elements are combined, they have to be combined in an original fashion. This Court in Tsitavas said the same thing. Not any combination is going to create an original work. There has to be an arrangement. That was the problem with plaintiffs during instruction. It was the problem with the argument now that he's making, which he didn't make to the district court that it was a selection and arrangement. These are arranged very differently. The chords that are broken, the sequence of the pitches are very, very different. He did make a uniqueness argument, however, didn't he? I mean, if I look at the closing argument and the expert, they say that certain aspects, and then they name what they are, those are unique. And that's a more traditional copyright. Is that substantially similar? Right. Between deposit copy and stairway to heaven, correct? Right, and the evidence was- And were the- Right. Are these jury instructions that we're talking about, do they implicate this uniqueness element? Well, I think they do, and I'd like to make an analogy to literary works. Back in the 1980s, the court said, in the context of a screenplay and the movie E.T., you can't take random bits and pieces. You have to show similarity in the story. So this court has a developed case law where you look at the sequence of events, the characters, the dialogue, and you come up with objective facts that establish the story. In music, traditionally, it's melody and lyrics. That's what you look for. And that would be the answer, I think, to your question. Where this argument, the plaintiff's argument, and where I believe Swirsky goes, takes a right turn when it shouldn't, is to allow selection and arrangement, the same kind of random bits and pieces that the court rejected in Litchfield, to allow that in music. Where you're looking at things and you're saying, well, there's no similarity in the melody in these two songs. There's no real sequence of notes that are the same. But they both combine a scale, little pairs of notes that are in different melody, an eighth note rhythm, which is commonplace, and voila. You know, you've got a protected work. That's not a similarity in melody. It's what Litchfield condemned, random similarities. Do you adopt the notion that if you have this selection and arrangement argument that you then are looking at a thin copyright? I would say this, Your Honor. First of all, I think the court should clarify that in deciding that issue, you look at the claim similarity, not the genre of the work. And here, we've got the most extreme example. Someone has crammed a descending chromatic scale into two measures. There's only so much you can do with that. There's only 12 notes, even in a chromatic scale. When you've done that, when you've limited the universe of what you're talking about, and filled it with public domain elements, then, yeah, there should be virtual identity. Because otherwise, what are you doing? You're doing what the amicus, the 123 songwriters, the musicologists have all pointed out. You are preventing songwriters from using public domain elements. Now, I'd like to talk just briefly about one point that counsel made, which is that they would win on the sound recording if the composition embodied in the sound recording were admitted. Their own expert said the Taurus deposit copy was a stronger case, and we cited that. The reason was the pairs, these pairs that they rely on so heavily, don't appear in the Taurus sound recordings. They're not in the studio recording. They're not in the bootleg recordings. And they've said, and Your Honor acknowledged, that it's fantasy to think that Jimmy Page went to the copyright office and looked at the deposit copy. He could not possibly have copied the quote-unquote pairs, which aren't protected anyway, but he could not possibly have copied them from the sound recording because they don't exist in the sound recording. That is the testimony of Dr. Stewart himself, that it's the pairs in the deposit copy that turned this into this fantastic claim. So if there were to try and go back, and they were trying to sue on the composition embodied in the sound recording, they'd have several different problems. One is the pairs aren't there. That's their big point, really, the pairs. The second is that as a new version of a prior work, the only thing that would be protected is the new matter, and the new matter is a couple of notes and the absence of the pairs. So their sound recording argument really doesn't help them. And the third problem that they have is the versions of Taurus that predate the 1968 registration, those were all merged into the federal copyright. So the federal copyright extinguished all common law protection that Randy Wolf had in those prior versions. Any version after that is owned by Lou Adler as a work for hire under the express terms of the songwriter agreement that they have. And as a work for hire, plaintiff can't sue as a beneficial owner because that's the established law in this circuit. You have to be an artist who transferred rights in return for royalties in order to be a beneficial owner, and he wasn't. Counsel, would you just argue for a minute on the continued vitality of the inverse ratio rule? Yes, Your Honor, I'd be happy to. We create an inference of copying by evidence of access and substantial similarity probative of copying. And as Rettmeister points out, that's limited to the question of whether or not the copying occurred. Also, under this Court's authority, substantial similarity for the purpose of proving copying requires similarities that are indicative of copying. That's it. So if you lower that because you have strong evidence of access, you are then saying you don't have to have substantial similarities that are indicative of access. They've gone out the window. Now, if you have substantial similarities that are indicative of access and you have access, you've created an inference of copying. What this circuit's inverse ratio rule and the problem with its logic is that if you have a high degree of access, if the defendant actually owns the recording, but you have something less than similarity that's indicative of copying, you're allowing an inference of copying without any indication that copying occurred. That's the problem with the inverse ratio rule. And that's why the Second Circuit, the Seventh Circuit, and the Eleventh Circuit have declined to adopt it. I would like to briefly say one thing. Jimmy Page, in 1961, produced a recording with a descending chromatic scale. It's discussed in the expert report, Exhibit 2092. In the early 60s, Jimmy Page was one of the most sought-after session guitarists in London. He did hundreds and hundreds, if not thousands, of recording sessions with everyone from Marianne Faithfull and Donovan to the Who and the Rolling Stones. In 1968, before coming to the U.S. and supposedly hearing Taurus, he recorded Ice Cream Dreams as a session musician, which has a descending chromatic scale. Jimmy Page did not need to hear Taurus to know about a descending chromatic scale. The accusations that he copied were never proven in the trial. The jury rejected that argument. And with all respect, I believe you should respect the jury's determination and affirm. Thank you, counsel. Thank you. We'll hear from the government. Thank you, Your Honor. Daniel Tenney for the United States. I want to start on the deposit copy issue, and I think it's helpful just to sort of walk through the various versions and what protection they received at various times. When a deposit copy was presented to the Copyright Office, that was a deposit of a complete copy of the copyrighted work. That's what the statute says. And so the composition embodied in that page of sheet music obtained federal protection on the date that it was submitted to the Copyright Office. There may have been a more complete version of the song, and the statute and the compendium both then and now refer to the possibility that there will be more than one version of a work and they might be separately registrable or entitled to copyright protection. If there was a more complete version that included protectable elements that were not in the deposited version, then any common law rights that existed in those protectable elements would have remained. The federal copyright wouldn't extinguish those. Then in 1978, works that had not been published and had not obtained copyright protection under what is now 303A of the Copyright Act obtained federal protection, and so any protectable elements of a work that had not previously obtained copyright protection would then be protected by federal law. But you would need to separately register that work, whatever it was, and at that time, as was pointed out earlier, you could register by using a sound recording for registration and you could say, insofar as a composition that contains protectable elements that I didn't receive copyright protection for before, you would present that and you would say, I want copyright protection for that. And you would get it automatically. The protection would happen automatically under the statute, but in order to file a lawsuit based on it, you would have to register it with the Copyright Office. This is assuming that you hadn't lost the protection in some other way, that it hadn't entered the public domain. But all we're dealing with here in this case is, because none of that was done, there was no sound recording deposited. It's clear that you couldn't deposit a sound recording before 1978 that was in the regulations. It's clear that copyright owners were told, based on the compendium which we've included in the appendix to our brief, they were told that all you're getting protection for is what you deposit for us. If there's an element that you think is important in your composition that's not in the deposit copy, please submit a new copy. Can I ask, do you happen to know, is the point that you've just made here, post-enactment of the 1976 Act, is that why we really don't have any case law that deals with what happens under the 1909 Act? Because it seems like, I don't know, we've spent the better part of an hour debating this point about the deposit copy, and it just seems like maybe it's completely irrelevant for all but a tiny portion of cases out there, this being one of them. I think that might be one reason, Your Honor, and there were musicians and studios that, after 1978, the effective date of the 1976 Act, that deposited copies of their sound recordings to say, we want the composition reflected in this sound recording. So that could be one reason. I think there are other reasons that most copyright claims are about melodies and lyrics, and those are the sorts of things that people put in their deposit copies anyway. And so, I mean, that sort of segues somewhat to the second issue in the case about whether there was infringement here. But it's true that this is not a circumstance in which it's impossible to get protection. It's just that the mechanisms that were used weren't done here for one reason or another. At the time that the song was, that Stairway to Heaven was written, to the extent that there are common law rights, we haven't taken a position on whether that's true or not, but if there were common law rights, they could have sued on them right then. And then subsequently, after the 76 Act took effect, they could have deposited a recording and said we want protection for the composition embodied in this recording, and then they could have brought an infringement suit based on that work. But the work that they brought this infringement suit based on was the deposit copy, the sheet music, which is a complete copy of the work that they obtained federal copyright protection for. So in order to prevail, they would need to demonstrate that there was infringement of that work. Can I ask you a question about thin versus broad protection, which is, I think, the issue posed in your amicus brief? You suggest in your brief that when we're dealing with, let me call them selection and arrangement, of uncopyrighted elements, it always gets thin protection when we're dealing with music. Isn't that your position? Your Honor, I think there are some caveats to that that would limit that. Tell me what the caveats are. That broad proposition troubles me. Because what we've talked about is when you have a small number of conventional elements. So here what we're talking about is two elements. We're talking about a descending chromatic scale and a chord, and maybe you would count three if you count the broken chord as separate from the chord itself. But in any event, it's a small number of elements. These are conventional musical elements. The test is not, we're not trying to set any broad rule for music that's different from the rules for anything else. The question is whether, if the range of protectable expression arranging these particular elements is small, and this is what has come up in a number of other contexts, then protection is thin. That's the basic law on the topic. That's what Rentmeester says. That's what our Fabric case says. But I thought you were arguing for a broader proposition, and maybe I was wrong, that when we deal with music and uncopyrighted elements, that they always get thin protection in selection and arrangement cases. That's not your position. I mean, I hope that we were, and if we weren't, I'll be careful today to talk, we're talking about a small number of elements. No, no. Take yourself out of the facts of this case for a second. I'm asking you a legal question. Is it your position that when we deal with an arrangement of uncopyrighted elements, uncopyrightable elements in a music case, they always get thin protection, or do we apply the general test that Mattel and Rentmeester talk about? No, we're not going that far, Your Honor. And we're not saying, I mean, what we're saying is when you have a small number of conventional elements and where the number of, you know, the... Excuse me. The government, in its brief, seemed to rely mostly on Satava, which was the jellyfish-in-glass case, and the Apple case, which was the screen of the Apple computer, what a desktop looks like. What cases, is there a robust line of cases indicating that music with a few number of elements gets thin protection? Because it seemed like music was treated more like books, and even though the same words are used in book after book, and even the same types of phraseology, it does not get thin protection in that way. What's the list of Ninth Circuit cases saying that music gets thin protection? There aren't a lot of music cases either way, and I think this goes back to the point I made earlier that most music cases are about melodies and lyrics and circumstances where everyone would agree that protection is broad. In Williams v. Gay, which was alluded to earlier, you know, there were a lot of elements there. There was a melody. We weren't talking about a small number, selection or arrangement of a small number of basic conventional musical elements, so I'm not sure that the issue is... We would be breaking new ground to apply this thin protection concept to musical compositions. Is that right? Well, potentially, but I think you would be further breaking new ground to say that it doesn't apply in music when it has not been context-specific in the past. So it's been applied to artworks. It's been applied to musical interfaces. This Court talked about how it was applied decades ago in the context of a play and characters in a play. This is just a general concept, and the application... I mean, so the bottom line is the government is taking the position that selection and arrangement and thin copyright, as has been known in the pictorial, graphic and sculptural works, should be applied in the same way in music works. Is that correct? Right. I mean, obviously, you'll have to adjust for the context in order to figure out what are conventional elements and how broad the range of expressive possibilities are. But here, to say I'm combining a descending chromatic scale and an A minor chord, there are a very limited number of ways to do that, so it fits within the framework that was set out in those other cases in those other contexts. And so you would say, just as there, there were a small number of ways to put a jellyfish in a jar or a small number of ways to make the graphic interface under the constraints that were placed in that case, you would say here, there are a small number of ways to do this. And so maybe if you think that this arises to the level of being copyrightable at all, at most, it would receive thin copyright protection, so we would want to look to whether the works are virtually identical. And since these works, nobody is saying, are virtually identical, you can tell by looking at the notes and the rhythm, that's why we thought at the end of the day that the defendant should prevail in this case. If I could just follow up on this line of questioning, because it looks like one of the amicus briefs argues that our court's opinion in Swirsky v. Carey, they argue stands out in allowing the plaintiff to proceed with the selection and arrangement claim with broad copyright scope. Do you agree? My time has expired, if I could answer the question. I think what was at issue in that case was a short melody, and that's different from a selection and arrangement of basic elements, so I don't know that I agree with the characterization of that case. What we're talking about here is a baseline that's composed of a chord and a descending chromatic scale. I don't think that's similar to what was at issue in Swirsky, so I don't know that... He said a title hook phrase, the shifted cadence, the instrumental figures, the verse-chorus relationship, and the fade ending. Are we to say that that's just melody? I guess I'm not that educated in musical terminology to know. I guess the title hook phrase, the hook is supposed to be, if I understand the terminology correctly, sort of the catchphrase, the thing that keeps your ear. I don't think we have something like that here. The case certainly doesn't stand for the proposition that even... You could debate about whether it was true or not that that was a combination of a small number of conventional elements. The case certainly doesn't stand for the proposition that even if you have a combination of a small number of conventional elements, you don't get thin protection. It doesn't say anything like that. In this case, it seems clear that that's what we're talking about here. Again, if we're limited to the deposit copy, and so then applying the same framework that's applied to other copyright cases. I've gone over my time. I appreciate that. Thank you, Your Honor. Thank you, counsel. Rebuttal? I think that before we even can discuss selections, arrangements, elements, we have to ask the predicate question, what are we comparing? Are we comparing the composition and body in the album recording, or are we comparing a deposit copy lead sheet which we know is inaccurate and is prejudicial, not the defendants, but the plaintiff? You didn't really argue a selection arrangement theory at trial, did you? Absolutely, we did. And to say otherwise is false and misleading to this Court. I didn't see an argument that there were unprotected elements which were used in a selected and arranged in a particular way, which is the selection and arrangements theory. Your theory was it was a direct infringement, right? No. We had a selections and arrangement instruction. We also had combinations of unprotected elements, Swirsky. We also had that it was used in a memorable and a creative way. We also had... Do you see the combination as distinct from the selection argument? I think it's virtually one of the same, and the question really comes down to originality. Let me... The phrases are thrown about. You didn't argue selection. You argued combination. Combinations of unprotectable elements... Correct. ...can be protectable if used in the original way. And do you view that as synonymous with selection and arrangement as used in the copyright law? Yes, we do, and I think that was clear through the transcripts at trial. And let me ask you then... Yes. Do you think that what you're arguing qualifies as a compilation as it's set out in Section 101? I don't see it as a compilation. I see it more of a combination of unprotectable elements. But let me take it further. What does that mean? Do you agree with what the government said, assuming that the issue of selection and arrangement was properly preserved? Do you agree with what the government stated, that the smaller the range of available creative choices, the thinner the copyright protection should be? Let me go right there. Two notes are protectable. Think about the greatest composer of score. Can you give me a yes or no answer, and then you can give examples of it? I'm sorry. I believe that... Is the government correct? Do you have any quarrel with their proposition that the smaller the range of available creative choices... That's false. ...the thinner the protection? That's absolutely false. You can have two notes, and they're protectable. And I'll give you a perfect example. John Williams, Jaws. Da-na, da-na, da-na, da-na. It's one of the most defined, one of the most recognizable pieces of music. It's offered protection. Everyone recognizes that Jaws is as much about the music as it is about the movie. And that's so distinct, and it's so creative. Is it the two notes that's protectable, or the two notes repeated? Well, you know, here's what we say. We can break things down to the as T, H, and E. We can break things down to the most minimal parts. The question is, is there the modicum of creativity? And what is that, however small? It doesn't mean we have to have descending chromatic scales and pitches and notes and this. It's not the magnitude of how many different elements. It's how creative it is. But it doesn't, to have two notes, I mean, Jaws may be not your best example, because to have two notes, your position is because they're memorable, therefore they enjoy some sort of heightened copyright status? No, it's not. It's not dependent on the number of elements. It's basically looking at the creativity. And what is the creativity if it's original? Original means not copied, and it has some modicum of creativity. Well, as I read your argument, I went through, I read your closing several times, and I read, of course, the other closing, and I read all your argument at trial, and it seemed to me that your focus was on the original parts of this, not on some combination. And you talked about what makes it unique, and then you laid out all of those things. That's an originality argument, correct? Originality, it's an originality, also a combinations or selections and arrangements argument. It's not. I mean, that's the problem with it is you never made that argument. You kept talking about what makes it unique as such and such, and then later you went on in reply to the amicus briefs and said, well, this could be bolstered by what is also selection and arrangement. But I understood one of your stronger arguments was what you considered to be, as you put it, the unique and original aspects of the song. Is that not correct? I believe that we did make a selections and arrangement argument. I believe it's on page 58 of our opening brief, and so respectfully... Not your, and I'm talking about your brief. I'm talking about trial. No, I think it's referenced there, just for your reference. At trial, the issue was that defendants were trying to break down elements into such minute parts that we had to give a combinations and selections or arrangements instruction in the instance that the jury was believed that these elements could not be used creatively. You can have a descending chromatic scale. No one owns that. But if it's used in an original way, meaning not copied, and modicum of creativity, you afford a copyright protection. Let me give you another example. I'll ask you another question. With respect to inverse ratio, the court did not give that instruction, and you argued when the court failed to give it that that was a problematic omission. Right. But you didn't make that argument with respect to what you now call your combination instruction. Why not? I think that we did make the argument for inverse ratio. The issue with the inverse ratio was that the Ninth Circuit does follow the inverse ratio. I know you made the argument. I don't think you quite understood. I'm sorry. You're not listening to the question. When it came up and the judge said, okay, here's a set of instructions, omitted from those instructions were at least two things that you would have liked. One, the inverse ratio rule. And you said to the judge, this should have been included, and there's colloquy about that. And there were other things where you disagreed with the judge's instructions. But on what you now claim is so central to your case, this combination, you didn't say to the judge, well, wait, that's a significant instruction that's been omitted. It's like the inverse ratio rule because it undoes our case. Why didn't you make that argument? I believe that was preserved, and I can... That's not my question. We did make the argument. Did you make the argument while the instructions were being put out? No, because we were told not to. But if you were told not to, why did you make all the other arguments that you made about inverse ratio rule and claiming inaccuracies in the wording and that sort of thing? But then you left out what you're now arguing to us is your most central point. No, I believe that's perhaps a misrepresentation. If we review page 58 of our brief, I think that it does identify and clarify that issue. I think... Am I out of time? You are. Am I out of time? Thank you, counsel. Thank you. The case has started to be submitted for decision and will be in recess for the morning. All rise.
judges: Thomas, Graber, McKeown, W. Fletcher, Bea, Ikuta, Murguia, Nguyen, Watford, Hurwitz, Bade